<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANTHONY COSGROVE, ROCCO FURFERO, THOMAS CROWLE, HOWARD HUEY, and KENDALL JOHNSTON, *Plaintiffs*, v. VEOLIA ES INDUSTRIAL SERVICES, INC. N/K/A CLEAN HARBORS INDUSTRIAL SERVICES, INC., *Defendant*. | Civ. No. 18-173 (KSH) (CLW) <br><br> <u>**OPINION**</u> |

**I.  Introduction**

Plaintiffs Anthony Cosgrove, Rocco Furfero, Thomas Crowle, Howard Huey, and Kendall Johnston allege in this action that their former employer, defendant Veolia ES Industrial Services, Inc. n/k/a Clean Harbors Industrial Services, Inc. ("VESIS"), failed to properly pay them prevailing wages for work performed at several utility company sites, in violation of New Jersey wage laws. VESIS has moved for judgment on the pleadings under Fed. R. Civ. P. 12(c), arguing that plaintiffs have failed to state a claim upon which relief can be granted.

VESIS's motion will be granted with respect to Count II. With respect to Count I, the parties will be directed to file supplemental briefing on the issue of whether a private cause of action exists pursuant to the statute under which plaintiffs have brought their claim; resolution of VESIS's motion with respect to that claim will await the Court's receipt of those supplemental papers.

1

**II.     Background**

The operative third amended complaint (D.E. 45, TAC) alleges as follows.  In 2014, Public Service Electric and Gas Company (PSEG) obtained approval from its regulator, the Board of Public Utilities (BPU), for a project known as the Energy Strong Program.  (TAC ¶¶ 14-16.)[1]  According to plaintiffs, the BPU "authorized and agreed to grant and allow PSEG certain rate hikes to which PSEG would not otherwise have been entitled," which plaintiffs characterize as financial incentives or assistance for carrying out the program.  (*Id.* ¶ 37.)

The Energy Strong Program involved upgrading approximately 30 switching stations that were flooded during Hurricane Sandy in 2012, modernizing 250 miles of gas mains in or near flood areas, adding redundancy to the power grid, and upgrading natural gas metering stations.  (*Id.* ¶ 17.)  PSEG undertook "extensive construction, reconstruction, installation, demolition, restoration, and alteration at its facilities," including demolishing and replacing transformers at the electrical stations.  (*Id.* ¶ 19.)  The work also included "extensive reconducting, reconstruction, and installation of underground electrical pipes across New Jersey at PSEG sites."  (*Id.* ¶ 20.)  PSEG retained and used the services of VESIS[2] in connection with these activities.  (*Id.* ¶¶ 21-22.)

---

[1] These paragraphs of the third amended complaint refer to the BPU as the "Public Utility Commission."  Consistent with Title 48, the BPU approval order upon which the complaint relies, and other references in the complaint itself, the Court will refer to the relevant entity as the BPU.

[2] At the time plaintiffs filed the third amended complaint, they were still asserting claims against other entities related to VESIS.  They have since dismissed their claims against those entities (D.E. 65), leaving only VESIS as a named defendant.  Additionally, multiple plaintiffs have since settled and dismissed their claims.  (*See* D.E. 115, 126.)  This opinion therefore focuses on the allegations made by the remaining plaintiffs against the remaining defendant.

Plaintiffs were employed by VESIS in various roles and performed work on PSEG sites and facilities throughout New Jersey. (*Id.* ¶¶ 8, 10, 23.) They documented their work and hours at the PSEG sites on "PSEG Service Receipt" forms on VESIS letterhead and "other similar documents" that were submitted to VESIS supervisors and management. (*Id.* ¶ 24.) Plaintiffs allege that VESIS failed to pay them prevailing wage rates and supplements under New Jersey prevailing wage statutes. Count I of the TAC alleges violation of N.J.S.A. § 34:13B-2.1 and -16 for failure to pay prevailing wages for work done on a public utility. Count II alleges violation of N.J.S.A. § 48:2-29.47 for failure to pay prevailing wages for construction work undertaken with financial assistance from the BPU.

Plaintiffs, along with other individuals who have since dismissed their claims, filed suit against VESIS and a number of related entities in New Jersey Superior Court, Middlesex County, on November 30, 2017. (*See* D.E. 1.) Defendants removed the action to this Court on January 5, 2018, invoking diversity jurisdiction. (*Id.*) The complaint was amended, and on February 1, 2019, the operative third amended complaint was filed. (D.E. 45.) VESIS filed its answer on February 15, 2019. (D.E. 47.)

VESIS has now moved for judgment on the pleadings, arguing that plaintiffs' claim in Count I is barred by their failure to exhaust administrative remedies; that Count II should be dismissed because PSEG did not pay for the Energy Strong Program work with BPU financial assistance; and that even if either claim survives dismissal, the statute of limitations bars any damages for work performed before November 30, 2015, or, at the earliest, the date on which the work commenced, May 23, 2014. (D.E. 74, Moving Br.; D.E. 81, Reply Br.) Plaintiffs counter that no exhaustion requirement applies to their claim; that the approval of the Energy Strong

3

Program and accompanying rate hikes qualified as financial assistance; and that the relevant statute of limitations is six, not two, years. (D.E. 77, Opp. Br.)

**III.     Standard of Review**

Under Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standards governing Rule 12(c) motions seeking dismissal on the pleadings mirror those governing motions to dismiss under Rule 12(b)(6) for failure to state a claim. *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). The court must "'view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party,' and may not grant the motion 'unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (quoting *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016)). The record for decision is circumscribed: the court "may only consider 'the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.'" *Id.* (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)).[3]

---

[3] VESIS moved to strike certain exhibits plaintiffs submitted with their opposition to the Rule 12(c) motion. (D.E. 80.) The Court denied that motion, indicating that the issue would be addressed in the ruling on the Rule 12(c) motion. (D.E. 131.) The challenged exhibits, which are attached as Exhibits G, I, J, and K to the certification accompanying plaintiffs' opposition to VESIS's Rule 12(c) motion and which comprise an expert report and interrogatory responses, are cited in the context of a discussion about plaintiffs' job duties and the nature of the work done for PSEG. (Opp. Br. 6-7). Not only are these documents outside the scope of what the Court may consider on a Rule 12(c) motion, the subject matter for which plaintiffs offer them is irrelevant to the issues raised in that motion. Accordingly, the Court declines to consider these exhibits, and it is unnecessary to convert the motion to one for summary judgment under Rule 56. *Cf.* Fed. R. Civ. P. 12(d).

## IV. Discussion

### A. Count I

VESIS seeks to dismiss Count I, in which plaintiffs allege a failure to pay prevailing wages in violation of N.J.S.A. § 34:13B-2.1,[4] on the basis that the state labor commissioner has not determined that VESIS failed to pay prevailing wages. Because this is a prerequisite to an employee's pursuit of a civil claim, VESIS argues, the claim must fail.

N.J.S.A. § 34:13B-2.1 is part of a statutory scheme addressing labor relations and labor disputes in the public utility context. *See generally* Public Utility Labor Disputes, N.J.S.A. §§ 34:13B-1 to -29. The law addresses such issues as collective bargaining; the form, term, and negotiation of employee-management labor agreements; strikes, lockouts, and work stoppages; and state seizure of public utility facilities in the public interest and related dispute resolution procedures. N.J.S.A. §§ 34:13B-2, -4 to -7, -13, -18 to -23, -27. The act also provides for penalties for certain violations, "to be recovered in the name of the State in an action at law in any court of competent jurisdiction," *id.* § 34:13B-24; makes it a misdemeanor to willfully violate, or to aid, abet, or attempt violation of, the act, *id.* § 34:13B-25; and permits the state, through certain officials, to sue for injunctive or declaratory relief, *id.* § 34:13B-26.

The specific provision plaintiffs invoke, § 34:13B-2.1, was added to the law in 2008, and provides in pertinent part as follows:

> Any employee employed by a construction contractor engaged in construction work on a public utility shall be paid the wage rate for their craft or trade as determined by the Commissioner of Labor and Workforce Development pursuant to the provisions of the "New Jersey Prevailing Wage Act," P.L.1963, c.150 (C.34:11-56.25 et seq.).
>
> A construction contractor who is found by the Commissioner of Labor and Workforce Development to be in violation of the provisions of this section shall

---

[4] Count I also alleges violation of § 34:13B-16, but that provision is definitional.

5

> be subject to the provisions of sections 11 and 12 of P.L.1963, c.150 (C.34:11-56.35 and 34:11-56.36) which apply to an employer for a violation of [the New Jersey Prevailing Wage Act].

Thus, employees "employed by a construction contractor engaged in construction work on a public utility" – a category that, at this preliminary juncture, the parties agree includes plaintiffs – are entitled to a wage rate that is determined by the labor commissioner under a separate statute, the New Jersey Prevailing Wage Act (NJPWA), N.J.S.A. §§ 34:11-56.25 to -47.[5] If the labor commissioner finds that the employing contractor failed to pay that rate, the contractor is subject to N.J.S.A. §§ 34:11-56.35 and -56.36, provisions of the NJPWA that create a disorderly persons offense for failing to pay the required wages; permit the imposition of administrative penalties, stop-work orders, and referral for prosecution; and authorize the commissioner's supervision of payments of amounts due to workers.

N.J.S.A. §§ 34:11-56.35 and -56.36 are silent about a private right of action. Instead, a different section of the NJPWA, § 34:11-56.40, permits employees to file a civil action to recover the difference between the prevailing wages to which they were entitled and what they were actually paid, plus costs and reasonable attorney's fees.

Although that provision of the NJPWA is not referenced in N.J.S.A. § 34:13B-2.1, the statute under which plaintiffs bring Count I, plaintiffs contend that the NJPWA's "provisions and protections have been extended to such work for 'public utilities'" regulated by the BPU via N.J.S.A. § 34:13B-2.1 (and N.J.S.A. § 48:2-29.47, the statute underlying Count II). (Opp. Br. 9; *see also id.* at 18 (arguing that § 34:13B-2.1 "expressly incorporates the [NJPWA] and its accordant rights and remedies to any aggrieved employee"). From this premise, plaintiffs appear

---

[5] The NJPWA applies to contracts above a certain threshold for public work where a public body is a party, or the work will be done on property owned or leased by a public body. *See* N.J.S.A. § 34:11-56.27.

6

to reason that in addition to the NJPWA remedies expressly referenced in § 34:13B-2.1 (that is, the provisions of N.J.S.A. §§ 34:11-56.35 and -56.36), they may also invoke the NJPWA's provision permitting a private cause of action. In other words, because § 34:13B-2.1 provides that employees engaged in qualifying work on a public utility "shall be paid the wage rate" that the labor commissioner determines pursuant to the provisions of the NJPWA, those employees are also permitted to exercise all rights employees have under the NJPWA, including the right to sue.

Although the Court has serious doubts about that line of reasoning – particularly in view of the next line of the statute, which expressly references only two remedial provisions of the NJPWA, neither of which is the provision affording employees a private cause of action, and in view of the far broader language in the statutory provision underlying Count II[6] – the parties' briefing does not sufficiently confront whether N.J.S.A. § 34:13B-2.1 (or the act in which it appears) permits an employee to file a civil suit in the event of a violation. Instead, VESIS appears to agree that a private cause of action exists, but argues that the labor commissioner is the gatekeeper for such a suit. (Moving Br. 4-5; Reply Br. 3.) In its reply, VESIS challenged plaintiffs' argument in opposition insofar as it relied on the NJPWA, noting that Count I was not asserted under that statute (Reply Br. 3), prompting plaintiffs to seek permission to file a sur-reply on the assertion that VESIS was raising a new argument (D.E. 90). The proposed sur-reply argued that plaintiffs *had* asserted their claim in Count I under the NJPWA (as well as under N.J.S.A. § 34:13B-2.1), based on ¶ 1 of the TAC and because the latter statute purportedly

---

[6] Specifically, N.J.S.A. § 48:2-29.47 provides that "[f]or the purpose of implementing the provisions of this section, the Commissioner of Labor and Workforce Development shall exercise all powers and duties granted by [the NJPWA] regarding the payment of the prevailing wage, and ***any worker employed in the performance of construction work subject to this section***, and the employer or any designated representative of the worker, ***may exercise all rights granted to them by that act.***" (Emphasis added).

7

incorporates the whole of the NJPWA.  The proposed sur-reply goes on to argue why the Court should recognize an implied private right of action under N.J.S.A. § 34:13B-2.1 itself.

Whether plaintiffs have the right to bring a civil action under N.J.S.A. § 34:13B-2.1, which contains no express right to do so and is found in a statutory regime that is likewise silent on the matter, is a key issue that the parties must directly and fully confront before the Court can determine whether Count I may proceed further.  It is fundamental that a federal court sitting in diversity, as this Court does here, is obliged to "apply the substantive law of the state whose laws govern the action." *Garza v. Citigroup Inc.*, 724 F. App'x 95, 99 (3d Cir. 2018) (quoting *Norfolk Southern Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 91 (3d Cir. 2008) (internal quotation marks omitted)); *see also Norfolk Southern*, 512 F.3d at 92 (identifying sources from which court discerns state substantive law).  And that substantive law does not lightly take the leap plaintiffs' position would require the Court to take here: "New Jersey courts have been reluctant to infer a statutory private right of action where the Legislature has not expressly provided for such action," and those reported decisions engage in a multifactor analysis in deciding whether to do so.  *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 168 N.J. 255, 271-72 (2001).

Until plaintiffs filed their proposed sur-reply (which, in the interest of efficiency and given the supplemental briefing that will be ordered, the Court deems filed, *see* L. Civ. R. 7.1(d)(6)), the briefing did not engage in this analysis.  Nor do the parties cite to any definitive case law recognizing, or declining to recognize, the cause of action plaintiffs now assert.[7]

---

[7] VESIS relies on, and plaintiffs seek to explain away, *Taveras v. PSC Industrial Outsourcing LP*, 2018 WL 3201797 (D.N.J. June 28, 2018) (Cecchi, J.).  *Taveras* dismissed a claim ostensibly brought under N.J.S.A. § 34:13B-2.1—though that was a matter of some question— on the same basis VESIS argues here; that is, that the labor commissioner had not made a prerequisite finding of a violation. Although that outcome appears to assume the availability of a private cause of action, *Taveras* did not confront the issue directly, and the mere implication is not enough to open the door to a new cause of action given New Jersey's approach to such issues.

Accordingly, the Court will require supplemental briefing directed to the specific issue of whether a private cause of action exists under N.J.S.A. § 34:13B-2.1. No later than December 14, 2020, the parties shall file letter briefs of no more than 7 pages single-spaced setting forth their respective positions on this issue. No responsive submissions will be permitted.

### B. Count II

VESIS also seeks to dismiss Count II, which alleges that it violated N.J.S.A. § 48:2-29.47, a statute providing in pertinent part that " [n]ot less than the prevailing wage rate shall be paid to workers employed in the performance of any ***construction undertaken in connection with Board of Public Utilities financial assistance***, ***or undertaken to fulfill any condition of receiving Board of Public Utilities financial assistance*** . . . ." (Emphasis added.) Plaintiffs allege that the qualifying "financial assistance" was the BPU's "authoriz[ation] and agree[ment] to grant and allow PSEG certain rate hikes to which PSEG would not otherwise have been allowed." (TAC ¶ 37.) VESIS argues that these rate increases do not constitute "financial assistance," while plaintiffs counter that the rate increases were an "incentive," and therefore fall within the statute.[8]

> The statute defines "Board of Public Utilities financial assistance" as
>
> any tax exemption, abatement or other incentive or any rebate, credit, loan, loan guarantee, expenditure, investment, grant, incentive, or other financial assistance which is, in connection with construction, approved, funded, authorized, administered or provided by the Board of Public Utilities, whether the assistance is received before, during or after completion of the construction . . . .

*Id.* Read in the context of the statutory provision in which it appears, and in view of the parties' arguments, this definition means that the construction work plaintiffs were hired to do must have

---

[8] VESIS also argues that the statute of limitations bars this claim in whole or in part. The Court's disposition makes it unnecessary to reach this issue.

been undertaken in connection with (a) an "incentive" that (b) the BPU approved, funded, authorized, administered, or provided.  There is no dispute that the BPU approved rate increases; therefore, the "approval" prong is not at issue.  What is in dispute is whether those rate increases were "incentives."

Plaintiffs argue, and VESIS agrees, that the term "incentive" means something that "motivates or encourages one to do something."  (Opp. Br. 13 (quoting New Oxford American Dictionary 858 (2001); *accord* Reply Br. 6).  The factual scenario plaintiffs allege does not indicate that the BPU's approval of the rate increases "motivate[d]" or "encourage[d]" PSEG to undertake the Energy Strong Program.  To the contrary, the third amended complaint alleges that "[a]s a result of the damage caused by Hurricane Sandy," PSEG "sought and obtained" the approval, indicating that PSEG, not the BPU, initiated the process. (TAC ¶ 15.)  Nowhere do plaintiffs allege facts suggesting that the BPU was the driving force behind the Energy Strong Program.  Additionally, as VESIS observes, PSEG initially sought approval for a $2.6 billion project to be funded by rate increases, and the BPU ultimately approved a settlement providing for a $1 billion project – less than half of the original amount.  (D.E. 77-1, Zatuchni Cert., Ex. A, 5/23/14 BPU Order at 2, 5.)  *See Wolfington*, 935 F.3d at 195 (court on R. 12(c) motion may consider "undisputedly authentic documents if the complainant's claims are based upon these documents").  As VESIS puts it, this is "the antithesis of an 'incentive.'"  (Reply Br. 7.)

Moreover, as plaintiffs concede, PSEG is required to obtain approval from the BPU for *any* rate increase. (*See* Opp. Br. 4 (citing *In re N.J. Am. Water Co.*, 169 N.J. 181, 187-88 (2001); N.J.S.A. § 48:2-21.)  In other words, PSEG is not entitled to a "rate hike" unless the BPU approves it.  Adopting plaintiffs' logic for why the BPU provided an "incentive" here, then, would mean that a utility-initiated project that depends on rate increases would be transformed

into a BPU-incentivized project simply because the utility takes the statutorily required step of requesting BPU rate approval.  The case law plaintiffs cite does not dictate such a sweeping result.  Although both cases discussed incentive-based ratemaking, albeit within the context of the specific statutory and regulatory regimes before each court, neither concluded that routine rate approvals constitute incentives. *See San Diego Gas & Elec. Co. v. FERC*, 913 F.3d 127 (D.C. Cir. 2019) (upholding denial of incentive rate treatment to utility under federal law and regulations aimed at encouraging certain infrastructure investment with respect to costs the utility had already incurred); *In re Application of Ohio Edison Co.*, 157 Ohio St. 3d 73, 77 (Ohio 2019) (reversing order that granted incentive payment because it was insufficiently tethered to any requirement to improve infrastructure; noting that "[a]n incentive generally serves to induce someone to take some action that otherwise would not be taken but for the incentive").

Count II will be dismissed for failure to state a claim.  Ordinarily, "'in non-civil rights cases, district courts have no obligation to offer leave to amend before dismissing a complaint unless the plaintiff properly requests it.'" *Wolfington*, 935 F.3d at 210 (citation omitted).  Here, plaintiffs have made no such request.  The Court has, however, directed the submission of supplemental briefing with respect to Count I, and the case will therefore remain open at least until decision is rendered on that claim. The Court will therefore exercise its discretion to dismiss Count II without prejudice.

If plaintiffs intend to file an amended complaint directed to Count II, the parties shall be prepared to discuss that issue on the December 9, 2020 teleconference with Magistrate Judge Waldor, including the substance of the amendment, whether VESIS will consent to the filing of the amendment, and a firm schedule for any attendant motion practice.

11

## V.        Conclusion

For the reasons set forth above, VESIS's motion for judgment on the pleadings is granted as to Count II, which is dismissed without prejudice.  With respect to Count I, the parties shall submit the supplemental briefing directed by this opinion no later than December 14, 2020. An appropriate order will issue.


Dated:  November 30, 2020                    /s/ Katharine S. Hayden
                                             Katharine S. Hayden, U.S.D.J.

12