<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANTHONY COSGROVE, ROCCO FURFERO, THOMAS CROWLE, HOWARD HUEY, and KENDALL JOHNSTON, <br><br> *Plaintiffs*, <br><br> v. <br><br> VEOLIA ES INDUSTRIAL SERVICES, INC. N/K/A CLEAN HARBORS INDUSTRIAL SERVICES, INC., <br><br> *Defendant*. | Civ. No. 18-173 (KSH) (CLW) <br><br><br><br> <u>**OPINION**</u> |

**Katharine S. Hayden, U.S.D.J.**

**I.     Introduction**

This action involves two claims under New Jersey prevailing wage statutes. Count I is asserted under N.J.S.A. § 34:13B-2.1, a provision requiring the payment of prevailing wages to employees of construction contractors doing construction work on a public utility. It appears in a statutory scheme that, as discussed more fully below, broadly addresses labor matters in the public utility context. The question before the Court is whether a private cause of action exists under § 34:13B-2. It does not, and Count I will be dismissed with prejudice.

Count II asserts a claim under N.J.S.A. § 48:2-29.47, which requires the payment of prevailing wages to workers performing construction undertaken in connection with financial assistance from the Board of Public Utilities. Defendant seeks dismissal of this claim under Fed.

1

R. Civ. P. 12(b)(6).  The Court denies that motion, and Count II will be permitted to proceed beyond the pleadings stage.

## II.  Background

The factual context of this action is set forth in the Court's prior ruling, familiarity with which is presumed.  (*See* D.E. 136, 11/30/20 Op.)  Briefly, plaintiffs Anthony Cosgrove, Rocco Furfero, Thomas Crowle, Howard Huey, and Kendall Johnston allege that their former employer, defendant Veolia ES Industrial Services, Inc., now known as Clean Harbors Industrial Services, Inc. ("VESIS"), violated New Jersey wage laws—specifically N.J.S.A. § 34:13B-2.1 and N.J.S.A. § 48:2-29.47—by failing to pay prevailing wages for work plaintiffs performed at various Public Service Electric and Gas Company ("PSEG") sites as part of PSEG's Energy Strong Program.  Plaintiffs filed their complaint in state court in 2017, and it was later removed to this Court and amended several times to add, drop, or modify the parties to the action.

Once the pleadings were closed, VESIS moved for judgment under Fed. R. Civ. P. 12(c).  The Court granted that motion in part and terminated the remainder, concluding that as to Count I of the then-operative third amended complaint ("TAC"), which alleged violation of N.J.S.A. § 34:13B-2.1, it was unclear whether a private cause of action existed under the statute, which necessitated additional briefing.  As to Count II, which asserted violation of N.J.S.A. § 48:2-29.47, the statute requires, in relevant part, that workers be employed in performing "construction undertaken in connection with Board of Public Utilities [BPU] financial assistance, or undertaken to fulfill any condition of receiving [BPU] financial assistance," and the TAC failed to allege facts that would satisfy the statutory definition of "BPU financial assistance."  Accordingly, the Court dismissed Count II, but did so without prejudice to plaintiffs' efforts to seek to amend that count.

Thereafter, the parties filed their supplemental briefing directed to whether a private cause of action exists under N.J.S.A. § 34:13B-2.1. (D.E. 142, Pls.' Supp. Br.; D.E. 143, Def.'s Supp. Br.). Plaintiffs also formally moved to amend the complaint to reinstate Count II, asserting that the proposed fourth amended complaint ("FAC") would add factual allegations demonstrating that the BPU's authorization of the Energy Strong Program included accelerated rate increases that, in substance, amounted to "financial assistance" within the meaning of N.J.S.A. § 48:2-29.47. (D.E. 146.) Over VESIS's opposition (D.E. 147), Magistrate Judge Waldor granted the motion to amend, holding that (1) good cause existed under Rule 16 to permit the motion to amend to be filed beyond the deadline set forth in the scheduling order, and (2) amendment was appropriate under Rule 15 because there was no undue delay and the proposed amendment was not futile. (D.E. 154.)

In response to plaintiffs' filing of the FAC (D.E. 155), VESIS moved to dismiss the restated Count II. (D.E. 158.) VESIS contends that (1) plaintiffs are not qualifying "workers" under the statute; (2) they did not perform qualifying construction work; and (3) their work was not undertaken with BPU financial assistance, and the Court should adhere to its prior determination in that respect. (*See* D.E. 158-1, Moving Br.; D.E. 170, Reply Br.) Plaintiffs, opposing, disagree with VESIS's interpretation of "workers"; contend that the facts show that they did perform construction work; and assert that the amended complaint allegations do support the conclusion that BPU financial assistance was afforded here, in the form of accelerated cost recovery and incentive ratemaking.

**III.     Count I**

The first issue for decision is the one queued up in the parties' supplemental briefing: whether a private cause of action exists under N.J.S.A. § 34:13B-2.1. Plaintiffs contend that

3

§ 34:13B-2.1 expressly incorporates a different wage statute, the New Jersey Prevailing Wage Act (NJPWA), N.J.S.A. §§ 34:11-56.25 to -47, which contains a section authorizing a private cause of action. Even if there is no express right, they continue, there is an implied cause of action because the protections afforded by the statute would otherwise be illusory. Defendants disagree that there is any express right of action or that the NJPWA is imported wholesale into § 34:13B-2.1, and argue that the three-part test New Jersey uses to assess whether an implied right of action exists has not been satisfied here.

As explained in the Court's prior opinion, N.J.S.A. § 34:13B-2.1 is part of a statutory scheme the parties refer to as the Labor Disputes in Public Utilities Act (LDPUA), which addresses labor relations and labor disputes in the public utility context. *See* N.J.S.A. §§ 34:13B-1 to -29. The policy underlying the act is expressly set forth in its first provision:

> It is hereby declared to be the policy of the State that heat, light, power, sanitation, transportation, communication, and water are life essentials of the people; that the possibility of labor strike in utilities operating under governmental franchise is a threat to the welfare and health of the people; that utilities operating under such franchise are clothed with public interest, and the State's regulation of the labor relations affecting such public utilities is necessary in the public interest.
>
> It is further declared to be the policy of this State that after the taking of possession of any public utility by the State pursuant to the provisions of section thirteen hereof [N.J.S.A. § 34:13B-13], such public utility shall become for purposes of production and operation a State facility and the use and operation thereof by the State in the public interest shall be considered a governmental function of the State of New Jersey.

N.J.S.A. § 34:13B-1. The act addresses the right to collectively bargain (§ 34:13B-2); addresses the form, term, and negotiation of employee-management labor agreements in the utility context (§§ 34:13B-4 to -7); provides for, under specified circumstances involving labor disputes, state seizure of public utility facilities in the public interest, during which employees may not participate in strikes "as a means of enforcing demands of employees against the State or for any other purpose

contrary to the provisions of [the] act") (§§ 34:13B-13, -19);[1] prohibits employees from being compelled to work without their consent (§ 34B:13-15); and makes it unlawful for public utility employees or management to engage in strikes or lockouts without sixty days' prior notice (§ 34:13B-18). It makes utility management and employees subject to penalties for unlawful lockouts or strikes and certain other conduct, "such penalty to be recovered in the name of the State in an action at law in any court of competent jurisdiction" (§ 34:13B-24); makes it a misdemeanor to willfully violate, or to aid, abet, or attempt violation of, the act (§ 34:13B-25); and permits the state, through certain officials, to sue for injunctive relief to prohibit violations of the act or for declaratory relief (§ 34:13B-26). Absent from the act is any provision addressing or providing for a right to sue.

Section 34B:13-2.1 is the provision under which plaintiffs assert their claim in Count I. It was added to the law in 2008 and provides, in full, as follows:

> Any construction contractor contracting with a public utility to engage in construction work on a public utility shall employ on the site only employees who have successfully completed any OSHA-certified safety training required for work to be performed on that site.
>
> Any employee employed by a construction contractor engaged in construction work on a public utility shall be paid the wage rate for their craft or trade as determined by the Commissioner of Labor and Workforce Development pursuant to the provisions of the "New Jersey Prevailing Wage Act," P.L.1963, c. 150 (C.34:11-56.25 *et seq.*).
>
> A construction contractor who is found by the Commissioner of Labor and Workforce Development to be in violation of the provisions of this section shall be subject to the provisions of sections 11 and 12 of P.L.1963, c. 150 (C.34:11-56.35 and 34:11-56.36) which apply to an employer for a violation of P.L.1963, c. 150 (C.34:11-56.25 *et seq.*).
>
> Nothing in this section shall be construed to apply to any public utility affiliate not regulated under the provisions of Title 48 of the Revised Statutes.

---

[1] *See also* N.J.S.A. §§ 34:13B-20, -21, -23 (addressing mandatory arbitration of labor disputes between public utilities and employees in the event of state seizure).

> The Commissioner of Labor and Workforce Development shall, pursuant to the "Administrative Procedure Act," P.L.1968, c.410 (C.52:14B-1 *et seq.*), adopt regulations to effectuate the provisions of this section.

Whether a statute gives rise to a private cause of action is a question of statutory interpretation, an undertaking that begins with the statutory text itself. *Lembo v. Marchese*, 242 N.J. 477, 486 (2020) (citing *DiProspero v. Penn*, 183 N.J. 477, 492 (2005)).[2] "If the statutory language clearly reveals the Legislature's intent, then [the Court's] interpretive mission comes to an end." *Id.* (citing *Nicholas v. Mynster*, 213 N.J. 463, 480 (2013)). Only if the plain text "leaves in doubt the Legislature's intent do we turn to extrinsic aids, such as 'legislative history, committee reports, and contemporaneous construction.'" *Id.* (quoting *DiProspero*, 183 N.J. at 492-93).

Here, the plain language of the statute reflects that no private cause of action is contemplated. Under the second paragraph, employees "employed by a construction contractor engaged in construction work on a public utility" are entitled to "the wage rate for their craft or trade" as the labor commissioner determines it to be under a separate statute, the NJPWA, N.J.S.A. §§ 34:11-56.25 to -47. The next paragraph explains how that entitlement is enforced: if the labor commissioner determines that the construction contractor violated "the provisions of this section"—which include the wage-rate entitlement, and also a requirement that the contractor employ only employees meeting certain safety prerequisites, as set forth in the first paragraph of the statute—the contractor is subject to N.J.S.A. §§ 34:11-56.35 and -56.36, part of the NJPWA. Those provisions, in turn, create a disorderly persons offense for failing to pay the required wages under the NJPWA; permit the imposition of administrative penalties, stop-work orders, and referral for prosecution; and authorize the commissioner's supervision of payments of amounts

---

[2] As a federal court sitting in diversity, this Court applies "the substantive law of the state whose laws govern the action," *i.e.*, New Jersey. *Garza v. Citigroup*, 724 F. App'x 95, 99 (3d Cir. 2018) (citation omitted).

6

due to workers. An entirely different section of the NJPWA, N.J.S.A. § 34:11-56.40—one not cited in N.J.S.A. § 34B:13-2.1—authorizes employees to file a civil action to recover the difference between the prevailing wages to which they were entitled and what they were actually paid, plus costs and reasonable attorney's fees.

Plaintiffs argue that N.J.S.A. § 34B:13-2.1 should be read to allow for a private cause of action because, they assert, it incorporates the entirety of the NJPWA by reference. By requiring that employees "shall" be "paid the wage rate for their craft or trade as determined by the Commissioner of Labor and Workforce Development pursuant to the provisions of the [NJPWA]," they posit, the statute incorporates by reference *all* rights and remedies of the NJPWA and therefore makes them available to litigants asserting claims under N.J.S.A. § 34B:13-2.1. (Pls.' Supp. Br. 2-3.) It cannot be the case, they continue, that only the private right of action section (N.J.S.A. § 34:11-56.40), is "somehow null and void." (*Id.* at 2.)

Perhaps recognizing the weakness of this argument, plaintiffs do not tarry long on it. As explained above, the next line after the language plaintiffs cite explains how an employee's right to be paid a certain wage is to be enforced: if the labor commissioner finds the construction contractor to have violated § 34B:13-2.1, the mechanisms in two specific sections of the NJPWA, N.J.S.A. §§ 34:11-56.35 and -56.36, become available. There is no mention of N.J.S.A. § 34:11-56.40, nor of any other sections of the NJPWA that serve as ways of enforcing an employee's right to prevailing wages.[3] Plaintiffs' reading of the statute would make the enforcement paragraph entirely unnecessary. *Burgos v. New Jersey*, 222 N.J. 175, 203 (2015) ("We do not support interpretations that render statutory language as surplusage or meaningless[.]"); *In re Commitment*

---

[3] *See, e.g.*, N.J.S.A. § 34:11-56.34 (employee may file protest with labor commissioner objecting to contractor's failure to pay prevailing wages); *id.* § 34:11-56.38 (prohibiting public body from awarding contracts to noncompliant contractors); *id.* § 34:11-56.47 (allowing losing bidders for public work to sue winning bidder for noncompliance with NJPWA).

7

*of J.M.B.*, 197 N.J. 563, 573 (2009) ("Interpretations that render the Legislature's words mere surplusage are disfavored. . . . [O]ur task requires that every effort be made to find vitality in the chosen language.").

Relatedly, plaintiffs' interpretation would disregard the choice the Legislature made in referencing two specific provisions of the NJPWA without referencing the rest (including, significantly, the section of the NJPWA authorizing a private cause of action). "When considering the meaning of legislation, we assume the Legislature is 'thoroughly conversant with its own legislation and the judicial construction of its statutes.'" *Burns, Estate of, by & through Burns v. Care One at Stanwick, LLC*, 468 N.J. Super. 306, 319 (App. Div. 2021) (quoting *Brewer v. Porch*, 53 N.J. 167, 174 (1969)). The NJPWA expressly grants private plaintiffs the right to sue for nonpayment of prevailing wages, showing that "the Legislature certainly knows how to authorize private causes of action when it desires to do so." *Id.* The text of other, similar prevailing wage laws establishes that the Legislature knew how to incorporate the entirety of the NJPWA, including the provision creating a civil cause if action, if it so chose. *See, e.g.*, N.J.S.A. § 48:2-29.47 (prevailing wage statute permitting workers covered by section to "exercise *all rights* granted to them by [the NJPWA]" (emphasis added)); N.J.S.A. § 5:12-161.4 (same); N.J.S.A. § § 18A:72A-5.2 (same); N.J.S.A. § 26:2I-5.4 (same). It did not do so in enacting § 34:13B-2.1, and the Court must respect that choice. *Burns*, 468 N.J. Super. at 319-20 ("Like the dog that didn't bark in the night, we are satisfied that by not expressly declaring a private cause of action . . . the Legislature consciously chose not to create one.").

Plaintiffs argue that even if the statute did not expressly create a cause of action, the Court should recognize an implied one. Generally, and as the Court has previously observed, "New Jersey courts have been reluctant to infer a statutory private right of action where the Legislature

8

has not expressly provided for such action." *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 168 N.J. 255, 271 (2001). In assessing whether a statute confers an implied cause of action, the Court must consider "whether: (1) plaintiff is a member of the class for whose special benefit the statute was enacted; (2) there is any evidence that the Legislature intended to create a private right of action under the statute; and (3) it is consistent with the underlying purposes of the legislative scheme to infer the existence of such a remedy." *Id.* at 272. Undergirding these factors is "a search for the underlying legislative intent." *Id.* at 272-73 (citation and internal quotation marks omitted).

With respect to the first element, plaintiffs, citing only to the language of § 34:13B-2.1 itself, contend that they are members of the relevant class because they are "employees employed by a construction contractor engaged in construction work on a public utility," that is, they fall into the category of workers delineated by the statute. (Pls.' Supp. Br. 3.) The defense, recognizing that N.J.S.A. § 34:13B-2.1 is part of a larger statutory scheme, asserts that the LDPUA aims to protect the public from losing access to vital utility services in the event of labor discord, and that it is the public, not employees in plaintiffs' position, that constitutes "the class for whose special benefit the statute was enacted." (Def.'s Supp. Br. 4-5.) The latter position is better supported by the context of the LDPUA, which articulates its purpose in the very first section, N.J.S.A. § 34:13B-1, and which in other sections addresses labor negotiations, strikes, governmental takeover of utilities, and related topics. The Court is satisfied that VESIS's interpretation is better grounded in the statute read as a whole. *See, e.g.*, *Burns*, 468 N.J. Super. at 318 (statutes to be read "sensibly in light of their surroundings"). For the same reasons, the third element disfavors plaintiffs here.

Even if plaintiffs are correct on the first and third elements, however, there is no evidence that the Legislature meant to allow private plaintiffs to sue under this statute. Comparing the phrasing of § 34:13B-2.1 to the NJPWA and to the other prevailing wage laws cited earlier[4] leads to the opposite conclusion. Plaintiffs suggest that a private right of action must be read into the statute because it creates a mandatory right while leaving the administrative enforcement of it discretionary. (Pls.' Supp. Br. 3-4.) But *Gaydos* involved the same scenario and, under the statute in question, declined to recognize a private cause of action. *See* 168 N.J. at 268-76. *Accord Burns*, 468 N.J. Super. at 321 (recognizing that while those protected by assisted living bill-of-rights legislation "likely lack the ability to voice their concerns . . . and are dependent on others . . . we simply cannot ignore that the Legislature was appreciative of that fact and chose not to expressly recognize a private cause of action despite its contrary approach in enacting other similar legislation").[5] Additionally, the regulations applicable to § 34:13B-2.1, which comprehensively address administrative enforcement of the statute, also indicate that judicial recognition of a private

---

[4] N.J.S.A. § 48:2-29.47 (requiring prevailing wages in construction with BPU financial assistance; covered workers can exercise all rights granted to them by NJPWA); *id.* § 5:12-161.4 (workers on certain jobs involving Casino Reinvestment Development Authority incentives or financial assistance can exercise all rights granted to them by NJPWA); *id.* § 18A:72A-5.2 (workers on certain jobs involving New Jersey Educational Facilities Authority incentives or financial assistance can exercise all rights granted to them by NJPWA); N.J.S.A. § 26:2I-5.4 (workers on certain jobs involving New Jersey Health Care Facilities Financing Authority incentives or financial assistance can exercise all rights granted to them by NJPWA). *See also* N.J.S.A. § 40:37A-55.3 (workers on certain jobs involving county improvement authority incentives or financial assistance may exercise all rights granted to them by NJPWA).

[5] The discretionary nature of the enforcement mechanisms better accords with the apparent overall purpose of the statute in providing myriad tools for state officials to head off labor strife and keep public utilities running for the benefit of the public, as discussed above.

cause of action would be inappropriate here.  *See* N.J.A.C. 12:66-1.1 to -4.6; *Gaydos*, 168 N.J. at 274, 280.[6]

Because no private cause of action exists under N.J.S.A. § 34:13B-2.1, which is an incurable defect in the pleading of Count I, that claim is dismissed with prejudice.  *Lutz v. Portfolio Recovery Assocs.*, __ F.4th __, 2022 WL 4295631, at *3, 8 (3d Cir. Sept. 19, 2022) (court need not permit curative amendment if it would be futile).

## IV.   Count II

VESIS has also moved to dismiss Count II of the fourth amended complaint, which asserts a claim under N.J.S.A. § 48:2-29.47, the statute concerning construction done with BPU financial assistance.  As summarized earlier, VESIS contends that plaintiffs are not "workers" who performed "construction" under the statute, and that the BPU "financial assistance" requirement remains unmet.

Fed. R. Civ. P. 8(a)(2) requires pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Whether the complaint states a claim sufficiently to survive dismissal under Rule 12(b)(6) involves a three-step process, whereby the Court (1) identifies the claim elements, (2) disregards legal conclusions, conclusory allegations, and any "formulaic recitation of the elements" of a cause of action, and (3) "evaluates the plausibility of the remaining allegations." *Lutz*, __ F.4th __, 2022 WL 4295631, at *3 (citations and internal quotation marks omitted).  The third step "involves assuming [the] veracity" of the remaining allegations, "construing them in the light most favorable to the plaintiff, and drawing

---

[6] Plaintiffs suggest that New Jersey courts' reluctance to recognize implied causes of action gives way in employment cases.  (Pls.' Supp. Br. 5.)  They also point to federal decisions looking to "rights creating" statutory language as indicative of legislative intent to permit an implied cause of action.  (*Id.* at 7.)  Here, the Court remains unpersuaded, because it must apply the tools of statutory interpretation as directed by the New Jersey Supreme Court, which simply leads to the opposite conclusion.

all reasonable inferences in the plaintiff's favor." *Id.* The plausibility standard is satisfied if the Court can reasonably infer from the factual content of the complaint that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Section 48:2-29.47 provides that "[n]ot less than the prevailing wage rate shall be paid to workers employed in the performance of any construction undertaken in connection with Board of Public Utilities financial assistance, or undertaken to fulfill any condition of receiving Board of Public Utilities financial assistance . . . ." As with the LDPUA, the prevailing wage rate is to be set by the labor commissioner pursuant to the NJPWA. *Id.* The statute defines BPU financial assistance, in relevant part, as follows:

> any tax exemption, abatement or other incentive or any rebate, credit, loan, loan guarantee, expenditure, investment, grant, incentive, or other financial assistance which is, in connection with construction, approved, funded, authorized, administered or provided by the Board of Public Utilities, whether the assistance is received before, during or after completion of the construction . . . .

*Id.* This Court held that the third amended complaint failed to plead a viable claim under N.J.S.A. § 48:2-29.47 because plaintiffs had not adequately alleged facts permitting the conclusion that the BPU's approval of the Energy Strong Program constituted an "incentive," and therefore the "BPU financial assistance" requirement of the statute was not met. (11/30/20 Op. 9-11.) As Judge Waldor recognized in granting plaintiffs leave to file their fourth amended complaint, that pleading added "significantly more detail" articulating the context in which the PSEG approval request was made and how the application and approval process fell outside the parameters of normal ratemaking procedures. (D.E. 154, at 13.)

### A. BPU "Financial Assistance"

VESIS continues to argue that the Energy Strong program's approval did not involve BPU "financial assistance" because its approval was not an "incentive."[7] It contends that the Court already ruled that the Energy Strong cost recovery mechanism the BPU approved does not constitute an incentive. But that misapprehends the scope of the Court's earlier decision, which ruled on a prior version of the complaint in which plaintiffs' allegations concerning the genesis of the Energy Strong program were far less robust. That pleading did not articulate a scenario in which PSEG was motivated to pursue its infrastructure improvement plans by the BPU, but rather one in which PSEG was taking a statutorily necessary step of seeking rate approval before it embarked on a plan it intended to do anyway. (*See* 11/30/20 Op. 10-11.) In their FAC, on the other hand, plaintiffs have placed Energy Strong in the broader context of BPU efforts, beginning around 2009, to prompt utility infrastructure investment and to utilize tools outside the normal ratemaking context to do so. (*See, e.g.*, FAC ¶¶ 18-25, 41-62.) The FAC also clarifies that although the approved amount was less than the original request (approximately $1 billion versus $2.6 billion), the reduced amount was nonetheless on top of regular rate approvals and permitted PSEG to recover its investment more quickly than it otherwise would. (*Id.* ¶¶ 46-62.) The additional factual allegations permit an inference that the BPU's approval of Energy Strong constituted an incentive for PSEG to undertake that program.[8] Accordingly, Count II will not be dismissed for failure to plead BPU "financial assistance."

---

[7] VESIS is incorrect that the law of the case doctrine precludes the Court from reaching a conclusion different from the one it reached in ruling on the prior version of plaintiffs' complaint. (*Cf.* Moving Br. 15, 16.) As VESIS recognizes, that doctrine limits the relitigation of an issue that *has been decided*. (*Id.* at 15 (quoting *Hamilton v. Leavy*, 322 F.3d 776, 786 (3d Cir. 2003)). The more expansive factual allegations in the FAC were not before the Court at the time it concluded that that plaintiffs had not plausibly pleaded a claim under the statute.

[8] VESIS's moving brief muddies the waters somewhat by proclaiming that BPU "financing," as opposed to "financial assistance," is required under the statute, and that this requires state money

### B. "Workers"

VESIS also argues that plaintiffs are not "workers" covered by the statute because they did not perform "public work." While § 48:2-29.47 does not define the term "worker," VESIS observes that the NJPWA does: as a "laborer, mechanic, skilled or semi-skilled, laborer and apprentices or helpers employed by any contractor or subcontractor and engaged in the performance of services directly upon a *public work*." (Moving Br. 11 (quoting N.J.S.A. § 34:11-56.26).) The NJPWA defines "public work," in turn, to mean specific tasks "done under contract and paid for in whole or in part out of the funds of a public body" or on property or premises owned by the "public body," or in certain situations involving leases by public bodies. N.J.S.A. § 34:11-56.26(5). "Public body," in turn, means "the State of New Jersey, any of its political subdivisions, any authority created by the Legislature of the State of New Jersey and any instrumentality or agency of the State of New Jersey or of any of its political subdivisions." N.J.S.A. § 34:11-56.56(4). Ultimately, VESIS's argument is that because "public work" requires a contract with a "public body," a condition that is absent here, the claim must fail.

As an initial matter, the NJPWA does not define public work to require a contract *with* a public body; the statute, as quoted above, defines that term to mean tasks "done under contract and paid for . . . out of the funds of a public body." N.J.S.A. § 34:11-56.26(5). While the definition does require public funds or public land (leased or owned), it is VESIS's briefing – not the text – that adds a "with" after "done under contract." (Moving Br. 11; Reply Br. 3.) Even assuming that inference is correct, there is another issue. As support for importing the "worker" definition from

---

flowing to the utility. (*See* Moving Br. 16.) But the definition of BPU "financial assistance" includes, for example, tax exemptions and abatements, which would not necessarily involve the flow of public money from state coffers to a utility. It is not clear if VESIS is indeed pursuing this line of argument, which does not appear again in its reply, but in any event the Court will not dismiss on this basis.

the NJPWA (and, by extension, the definition of "public work"), VESIS contends that the NJPWA and § 48:2-29.47 should be construed together because they deal with similar subject matter. (*Id.* 9-10 & n.7.) But, as noted earlier, statutory interpretation begins with the text of the statute, and § 48:2-29.47 contains no such limitation—although it does indicate the Legislature's awareness of how to incorporate provisions of the NJPWA as it sees fit. *See* N.J.S.A. § 48:2-29.47 (prevailing wage rate to be "the rate determined by the [labor commissioner] pursuant to the provisions of [NJPWA]"; "any worker employed in the performance of construction work subject to this section . . . may exercise all rights granted to them by [NJPWA]").

Moreover, as both sides have recognized, prevailing wage protections have been extended to a variety of settings and appear in statutes addressing a range of positions. *See, e.g.*, *supra* n.4. Imposing a "public contract" or "public funds" requirement would narrow the scope of the protection in N.J.S.A. § 48:2-29.47 (and similar wage statutes) in a way that it is not clear the Legislature intended. The Court declines to engraft the limitation VESIS proposes. Accordingly, this is not an element of plaintiffs' claim, and Count II will not be dismissed for failure to meet it.

### C. "Construction"

VESIS performs a similar exercise in arguing that the "construction" undertaken with BPU financial assistance under N.J.S.A. § 48:2-29.47 must be "construction on a public utility" because the BPU's jurisdiction is over public utilities. In this instance, they import the definition of that term from the LDPUA, which provides as follows:

> The term "construction work on a public utility" shall, in connection with the construction of any public utility in the State, mean construction, reconstruction, installation, demolition, restoration, and alteration of facilities of the public utility. ***The term "construction work on a public utility" shall not be construed to include operational work***, including flaggers, snow plowing, vegetation management in and around utility rights of way, mark outs, janitorial services, landscaping, leak surveyors, meter work, and miscellaneous repairs.

15

N.J.S.A. § 34:13B-16(g) (emphasis added). VESIS argues that what it contracted to do fell into the category of routine "operational work," and therefore what plaintiffs did was not "construction." Plaintiffs counter that their work was not routine – it was an integral part of a large-scale infrastructure project for PSEG. They cite complaint allegations concerning the role of plaintiffs in the demolition and reconstruction of electrical system transformers as part of the Energy Strong program. (Opp. Br. 27-29 (citing FAC ¶¶ 66-76).)

Assuming *arguendo* that "construction" in N.J.S.A. § 48:2-29.47 means "construction on a public utility" as defined in the LDPUA, dismissal is not warranted on the basis that plaintiffs have failed to allege qualifying work. VESIS's argument depends on the contents of a contract it appends to its motion to dismiss. (*See* D.E. 158-2, Kelly Decl., Ex. A.) Although that contract does address PSEG's generation of waste materials during "normal operations" and "routine operations," as VESIS cites in its brief (Moving Br. 13), the sections VESIS quotes are not limited to such operations:

> 1.1   [PSEG] . . . will in the course of routine operations, ***and as a result of non-routine events,*** generate various Wastes, including; Hazardous Waste, Universal Waste, PCB Waste, Electrical Equipment, Used Oil/Recycled Fuel, Spill Cleanup Waste, Contaminated Soil, Industrial Service Waste, and other Non-Hazardous Waste, Surplus/Off Spec Materials (when used collectively, "Waste Materials").
> . . . .
>
> 1.4   Company Waste Materials may be generated from normal operations, planned maintenance, ***unplanned emergency work, spill response activities or remediation activity*** at fixed Company operating facilities, or at remote, unmanned locations . . . or third-party owned properties.

(D.E. 158-4, at 3 (emphases added).) Plaintiffs do not dispute the authenticity of the contract, but they also argue that it does not reflect the full, accurate scope of the work VESIS, and by extension they, performed as part of the Energy Strong program, and further argue that their claim in Count

16

II is based on the statute, not a contract. They cite work orders, deposition testimony, and an expert report as more accurately reflecting what they did.

This dispute over whether plaintiffs performed "construction" work or merely routine, operational work – assuming, without deciding, that the statutory interpretation VESIS proffers is correct – cannot be resolved at this stage and on the documentary evidence both sides have submitted. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (on a Rule 12(b)(6) motion, the Court may properly consider documents "'integral to or explicitly relied upon in the complaint," and "'undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document'" (citations omitted)); *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004) ("In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."). The FAC, read as a whole, sufficiently alleges that plaintiffs performed more than mere "operational work" in carrying out their responsibilities on a program, Energy Strong, that they also assert fell outside the category of "routine" for PSEG.[9] This gets them by a motion to dismiss.

**V.    Conclusion**

For the reasons set forth above, Count I is dismissed with prejudice. The motion to dismiss Count II is denied. An appropriate order will issue.

Dated: September 30, 2022                         /s/ Katharine S. Hayden
                                                  Katharine S. Hayden, U.S.D.J.

---

[9] *Compare, e.g.*, FAC ¶¶ 67, 69-71, 73-76 (tasks involved demolition, containment, and removal of contamination) *with* N.J.S.A. § 34:13B-16(g) (qualifying tasks include demolition, restoration, and alteration of facilities of public utility); *see also Taveras v. PSC Industrial Outsourcing LP*, 2018 WL 3201797 (D.N.J. June 28, 2018) (Cecchi, J.) (allegation that plaintiffs "performed utility work, such as clean-up, waste removal, restoration, and remediation, and similar tasks" was sufficient at Rule 12(b)(6) stage to meet definition under N.J.S.A. § 34:13B-16(g)).